**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Charles Nelson,

Plaintiff

v.

Nevada Dept. of Corrections, et al.,

Defendants

Case No.: 2:24-cv-01435-JAD-DJA

**Order Screening Complaint and Denying Motions for Appointment of Counsel**

[ECF Nos. 1, 1-2, 3]

Plaintiff Charles Nelson brings this civil-rights action under 42 U.S.C. § 1983, claiming that his First, Eighth, and Fourteenth Amendment rights were violated while he was incarcerated at Nevada's Ely State Prison ("ESP"). Because Nelson applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has pled a colorable First Amendment retaliation claim but dismiss his Eighth and Fourteenth Amendment claims with prejudice and without leave to amend. I then stay this case for 90 days to allow the parties an opportunity to resolve this dispute by mediation.

## Background

### A. Nelson's factual allegations[2]

While Nelson was at ESP, Assistant Warden Tasheena Cooke instructed ESP CERT officers to take all of his property. When Nelson spoke to Cooke about this, Cooke responded, "You can grieve it like you grieve everything else. And it will come back denied like all my other grievances."[3]

---

[1] ECF No. 1.

[2] This is a summary of allegations and should not be taken as findings of fact.

[3] ECF No. 1-1 at 3.

Nelson initiated 11 different requests for receipts because the CERT officers took all his property with the receipts. Against Nevada Department of Corrections ("NDOC") policy, none of the officers inventoried Nelson's property or issued any unauthorized-property notices. Cooke denied his requests for receipts and responded that it was "her prison" and that she "runs it as such."[4]

Nelson wrote to Warden Gittere and informed him of the retaliation he faced from Cooke. Nelson spoke to Gittere face-to-face twice. During their first conversation, Gittere told Nelson that he "takes the words of his officers" and that Cooke took his property and that Nelson should listen to Cooke's "advice and stop with the grievance nonsense." During their second conversation, Gittere told Nelson that he backed Cooke and that Nelson would just have to "deal with it."[5]

**B. Nelson's claims**

Based on these allegations, Nelson purports to bring two Eighth Amendment cruel-and-unusual-punishment claims for property deprivation and retaliation against the NDOC, Cooke, and Gittere. But because Nelson's allegations do not implicate the Eighth Amendment, I dismiss that claim with prejudice and instead liberally construe his allegations as claims for Fourteenth Amendment due-process violations and First Amendment retaliation. Nelson seeks monetary damages.[6]

---

[4] *Id.*

[5] *Id.* at 4.

[6] *Id.* at 1, 3–4, 6.

**Discussion**

**A. Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[7] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[8] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[9]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[10] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[11] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[12] but a plaintiff must provide more than mere labels and conclusions.[13] "While legal conclusions can provide the framework of a

---

[7] *See* 28 U.S.C. § 1915A(a).

[8] *See* 28 U.S.C. § 1915A(b)(1)(2).

[9] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[10] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[11] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[12] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

complaint, they must be supported with factual allegations."[14] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15]

**B. Analysis of claims**

***1. Nelson cannot sue the NDOC.***

Nelson sues the NDOC, which is an arm of the State of Nevada. The Eleventh Amendment to the United States Constitution immunizes states and arms of the state from being sued for damages in a civil-rights suit in federal court.[16] So I dismiss the NDOC from this action without leave to amend because it is an arm of the state and cannot be part of this federal lawsuit under 42 U.S.C. § 1983.[17]

***2. There are no allegations in Nelson's complaint to support an Eighth Amendment violation.***

There are no allegations in the complaint that would state any colorable Eighth Amendment violation. The facts Nelson alleges fit more closely within the First and Fourteenth Amendments. So I dismiss Nelson's Eighth Amendment claim with prejudice and instead analyze his allegations under the First and Fourteenth Amendments.

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[15] *Id.*

[16] *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.").

[17] *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

### *3. Nelson's allegations don't support a Fourteenth Amendment due-process property-deprivation claim.*

Nelson is suing prison officials for taking his property. While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss.[18] An authorized deprivation is one carried out under established state procedures, regulations, or statutes.[19]

Nelson alleges that CERT officers, at Cooke's direction, took his property, failed to inventory it, and didn't issue the unauthorized-property notifications that NDOC policy required. Because Nelson describes an ***un***authorized deprivation of his property, and not one that was performed under the prison's policies and procedures, he cannot establish a Fourteenth Amendment due-process claim unless no post-deprivation remedy is available to him. The State of Nevada provides in Nevada Revised Statute § 41.0322 a meaningful post-deprivation remedy for this type of loss. So Nelson must pursue that remedy instead of a due-process claim.[20] I thus dismiss this claim with prejudice because amendment would be futile.

---

[18] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).

[19] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

[20] *See* Nev. Rev. Stat. § 41.0322 (setting forth guidelines for actions by persons in custody of the NDOC to recover compensation for loss or injury).

***4. Nelson's allegations don't support a Fourteenth Amendment due-process administrative-grievance claim.***

To the extent that Nelson is attempting to sue Cooke or Gittere for denying his grievances, Nelson fails to state a claim. Prisoners have no stand-alone due-process rights related to the administrative grievance process.[21] So I dismiss this claim with prejudice as amendment would be futile.

***5. Nelson states a colorable First Amendment retaliation claim.***

Inmates have a First Amendment right to file grievances and to pursue civil-rights litigation in the courts.[22] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[23] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[24] Total chilling is not required to state a retaliation

---

[21] *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process).

[22] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[23] *Id.*

[24] *Id*. at 567–68.

claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[25]

I find that Nelson states a colorable retaliation claim. Based on the allegations, Nelson is known to file many grievances, which appears to be the impetus for Cooke directing CERT officers to take his property. Thus, as Nelson alleges these facts, Cooke directed officers to engage in an adverse action against Nelson because of his use of the grievance process, which is protected conduct. Because destroying someone's property could chill a person of ordinary firmness from engaging in further First Amendment activities, I find at this early stage of the proceedings that Nelson states a colorable First Amendment retaliation claim against Cooke.

The same is true for Nelson's First Amendment retaliation claim against Gittere.[26] Nelson alleges that after he informed Gittere of Cooke's actions, Gittere condoned those actions by acknowledging that Cooke took Nelson's property and that Nelson needed to listen to Cooke and stop filing grievances. So Nelson's First Amendment retaliation claim may proceed against both Cooke and Gittere.

**C. Motions for Appointment of Counsel**

Like many prisoners who file civil-rights claims, Nelson asks the court to find and appoint a free lawyer.[27] Nelson argues that his claims are "so complex" that he'll need expert testimony and that he doesn't "fully understand the law" or "speak in 'the law.'"[28]

---

[25] *Id.* at 568–69.

[26] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

[27] ECF Nos. 1-2, 3 (identical motions).

[28] ECF No. 1-2 at 3–4.

A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims.[29] The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances."[30] "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."[31] "Neither of these considerations is dispositive and instead must be viewed together."[32]

I do not find exceptional circumstances here. Nelson has demonstrated the ability to articulate his claims. And his inability to understand and speak the law is a circumstance common to most pro se litigants and, thus, is not exceptional. So I deny his motions to appoint counsel.[33]

**Conclusion**

IT IS THEREFORE ORDERED that **Nelson's motions to appoint counsel [ECF Nos. 1-2, 3] are DENIED.**

IT IS FURTHER ORDERED that:

- Nelson's Eighth and Fourteenth Amendment claims are DISMISSED with prejudice and without leave to amend;

---

[29] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

[30] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

[31] *Id.*

[32] *Id.*

[33] ECF Nos. 1-2, 3.

- **His First Amendment retaliation claim MAY PROCEED against defendants Cooke and Gittere**; and
- His claims against NDOC are dismissed from the complaint without leave to amend.

Given the nature of the claim that I have permitted to proceed, IT IS FURTHER ORDERED that **this action is STAYED for 90 days** to allow the parties an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. **I refer this case to the Court's Inmate Early Mediation Program** and will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Once an answer is filed, the court will issue a scheduling order setting discovery and dispositive motion deadlines. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Nelson's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If the case does not settle, then the court will determine whether to grant Nelson's *in forma pauperis* application. Nelson will be required to pay the full statutory filing fee for a civil

action regardless of whether the court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting Nelson's application to proceed *in forma pauperis*. If Nelson is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b); if Nelson is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

If any party desires to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have seven days to file a response, and no reply may be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

If Nelson needs an interpreter for the mediation, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to**

- **FILE** the complaint (ECF No. 1-1);
- **SEND** Nelson a copy of his original complaint (ECF No. 1-1); and
- **ADD** the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance** for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: January 30, 2025

U.S. District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Charles Nelson,

Plaintiff

v.

Nevada Dept. of Corrections, et al.,

Defendants

Case No.: 2:24-cv-01435-JAD-DJA

**Attorney General's Report of Results of 90-Day Stay**

**This form must be filed only by the Office of the Attorney General.**
**The inmate plaintiff MUST NOT file this form.**

On January 30, 2025, the Court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, was permitting at least one claim to proceed, and that the Office of the Attorney General of the State of Nevada must file this report on the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the statements below and fill in any additional information as required, then proceed to the signature block.]

____ A mediation session with a court-appointed mediator was held on ______________ [*enter date*] and the parties reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting to continue the stay until a specified date upon which they will file a stipulation of dismissal.*)

____ A mediation session with a court-appointed mediator was held on ______________ [*enter date*], and the parties did not settle. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous*

*stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for ________________ [*enter date*].

____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

____ None of these statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the statements below, fill in any additional information as required, then proceed to the signature block.]

____ The parties engaged in settlement discussions and reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion to continue the stay until a specified date upon which they will file a stipulation of dismissal.*)

____ The parties engaged in settlement discussions but did not reach a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of these statements fully describes the status of this case, so the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _______ day of __________________, ______ by:

Signature: ____________________________

Name: ____________________________

Phone #: ____________________________

Email: ____________________________